UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| WILLIAM P. WATTS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:07-cv-191 |
| v. ) | Judge Mattice |
| ) | |
| U.S. STEEL WORKERS LOCAL ) | |
| UNION 3115, MUELLER COMPANY, ) | |
| *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## **MEMORANDUM AND ORDER**

Before the Court are: (1) Defendant U.S. Steel Workers Local Union 3115's Renewed Motion for Summary Judgment [Court Doc. 53] and (2) Defendant Mueller Company, Steve Jones, Tim Knapp, and Wayne LaFevor's Renewed Motion for Summary Judgment as to Defense Numbered I, Statute of Limitations [Court Docs. 49, 50]. Plaintiff has also filed three Motions for Summary Judgment [Court Docs. 27, 38, 46].

**I.    STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS AND PROCEDURAL HISTORY

On December 21, 2007, the Court entered a Memorandum and Order [Court Doc. 28] granting in part and denying in part Defendants' motions to dismiss and motions for summary judgment on statute of limitations grounds. The relevant facts are set forth therein and need not be restated here.

In its Memorandum and Order, the Court dismissed Plaintiff's Title VII claims as

barred by Title VII's ninety-day statute of limitations. (Court Doc. 28 at 5.) As to Defendants' motions for summary judgment on Plaintiff's hybrid § 301 claim, the Court noted that the timeliness of Plaintiff's § 301 claim depended on when Plaintiff knew or should have known that the Union was no longer pursuing his grievance. (*Id.* at 7.) The Court found that the record, as of December 21, 2007, was "devoid of evidence relating to Plaintiff's knowledge of the Union's decision to withdraw his grievance." (*Id.*) The Court held that it was Defendants' burden to show that Plaintiff knew or should have known that the Union withdrew his grievance on or before February 7, 2007. (*Id.*) Because Defendants had failed to meet their summary judgment burden as to an essential element of their claim, the Court denied Defendants' motions for summary judgment on Plaintiff's § 301 claim. (*Id.* at 7-8.)

### III. ANALYSIS

Since the Court's December 21, 2007 Memorandum and Order, the parties have engaged in discovery, including the taking of Plaintiff's deposition. (Court Doc. 50-4.) Defendants have renewed their motions for summary judgment on statute of limitations grounds, claiming that there is no material fact in dispute as to whether Plaintiff knew or should have known that the Union withdrew his grievance prior to February 7, 2007. (Court Doc. 50-1 at 2; Court Doc. 54 at 4-5.)

In his deposition, Plaintiff repeatedly acknowledged that, as early as August 2005, he understood that the Union was not going to help him get his job back. (Deposition of William P. Watts ("Pl.'s Dep."), Court Doc. 50-4, pp. 33, 34, 39, 41, 53, 58.) Plaintiff described having attended a meeting with Raymond Morton, president of U.S. Steel

Workers Local 3115, Ulysses Strawter, vice-president of Local 3115, and members of Mueller Company's management team. (*Id.* at 29-34.) Plaintiff was unable to recall the exact date of the meeting, but acknowledged that it occurred in "early August of 2005." (*Id.* at 34.) During that meeting, Morton and Strawter represented Plaintiff and discussed Plaintiff's termination with Mueller Company's management team, but no decision was made as to whether Plaintiff would be reinstated. (*Id.* at 32-33.) Plaintiff called Morton later the same day and Morton informed him that Mueller Company had decided that it would not rehire him. (*Id.*) Plaintiff claims that Morton told him, "this is it" and "[w]e can't do nothing else about it." (*Id.*)

In his deposition, Plaintiff also described having called Strawter in October 2005 to inquire about getting his job back. (Pl.'s Dep. at 38-39.) Plaintiff claims that Strawter told him that there was nothing Strawter could do for him. (*Id.*) Plaintiff also said that he was told by another Union member that the Union was "not going to represent [him]." (*Id.* at 39.) Plaintiff acknowledged that, during September, October or November of 2005, he had three different Union representatives tell him that the Union was not going to help him. (*Id.* at 40.)

The record also contains an affidavit of Raymond Morton in which Morton states that he oversaw the filing and handling of Plaintiff's grievance. (Affidavit of Raymond Morton ("Morton Aff."), Court Doc. 56, ¶ 4.) Morton was present at two meetings held in September 2005 to resolve Plaintiff's grievance. (*Id.* ¶ 5.) After the second meeting, the Union "decided not to pursue the grievance contesting Mr. Watts' termination. That decision was based on a full review of the facts related to Mr. Watts' discharge and on the

Union's determination that it could not prevail in arbitration." (*Id.* ¶ 6.) Morton states that he "immediately told Mr. Watts of the Union's decision not to pursue the grievance contesting the termination of his employment." (*Id.*)

The record also shows that Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC). (Court Doc. 20-2 at 56-57.) The record is unclear as to when Plaintiff filed his EEOC charge, but he received a right-to-sue letter on October 17, 2006. (Court Doc. 20-2 at 56.) The right-to-sue letter states that Plaintiff filed his EEOC charge more than 180 days before October 17, 2006. (*Id.*) The Court therefore finds that Plaintiff filed his EEOC charge sometime prior to April 20, 2006. During the EEOC's investigation of his charge, Plaintiff told the EEOC representative that he believed the Union was not going to represent him. (Pl.'s Dep. at 53.) At his deposition, Plaintiff acknowledged that he "knew the Union wasn't going to do nothing for [him] before [he] even filed [with the EEOC]." (*Id.* at 58.)

The only evidence that Plaintiff has presented to support his contention that his claim is timely is contained in Plaintiff's unsworn "Memorandum of Law and Fact in Support of My Renewed Motion for Summary Judgment." (Court Doc. 52.) Plaintiff states: "For as I know the Union was not going to grievance my case at no time the Union said Mr. Watts we are no longer grievance your case." (*Id.*) He claims that "at no point they [the Union] said Mr. Watts we are no longer grievance your case they [the Union] said they sent me a letter on Sept. 19 2005 that was a lie I have neve[r] got that letter." (*Id.*) He claims that "the company [and] the union a[re] lieing" to the Court. (*Id.*)

Viewing the facts in the light most favorable to the Plaintiff, as the Court must do on

a motion for summary judgment, the Court assumes that the Union did not notify the Plaintiff in writing that it was no longer pursuing his grievance. In his multiple filings with the Court, Plaintiff repeatedly asserts that representatives of both Mueller Company and the Union have "lied" to the Court about various aspects of this case. (Court Docs. 46, 52.) In an effort to view the facts in the light most favorable to the Plaintiff, for purposes of the instant motions, the Court will disregard statements made by representatives for the Defendants and will consider only Plaintiff's own statements.

When an alleged breach of the duty of fair representation stems from the union's decision not to pursue a claim, the statute of limitations runs from the point that the claimant knew or should have known "that the union had elected to proceed no further." *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221 n.1 (6th Cir. 1995); *see also Adkins v. Int'l Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir. 1985) (holding § 301 limitations period runs from when a plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.")

Plaintiff appears to be arguing that his claim is not time-barred because the Union never explicitly informed him, by letter or otherwise, that it was not going to pursue his grievance. A union is not required, however, to send a formal letter notifying a claimant of its intent to withdraw a grievance. *See Dowty v. Pioneer Rural Elec. Co-op, Inc.*, 70 F.2d 52, 57 (6th Cir. 1985) (holding that failure to receive formal notice of an arbitration decision did not toll the § 301 limitations period so long as employee knew about the decision). A claimant has an independent duty to keep himself apprised of the progress of his grievance. *Angelo v. Kroger Co.*, 1987 WL 44635, *6 (6th Cir. Sept. 3, 1987). The key

inquiry for the Court is whether Plaintiff knew or should have known that the Union was not going to pursue Plaintiff's grievance, not whether the Union formally notified Plaintiff of its intent to withdraw his grievance.

This case is factually similar to *Howell v. General Motors Corp.*, 19 Fed. App'x 163 (6th Cir. 2001), in which the United States Court of Appeals for the Sixth Circuit held that a § 301 claim was untimely. In that case, the plaintiff argued that the union failed to send him notice that it had withdrawn his grievance. The court noted that the union had informally spoken with the plaintiff and informed him that it had been unable to secure a settlement of his grievance. The union also told him that "there was nothing further that [the union] could do to help Plaintiff be reinstated." *Id.* at 165. The court held that the plaintiff's limitations period ran from the time of his conversation with the union because, at that time, the plaintiff "knew or should have known . . . that the union had elected to proceed no further on his behalf." *Id.* at 166.

Similarly, in this case, although the Union may not have sent Plaintiff a formal letter notifying him of its intent to withdraw his grievance, Plaintiff has acknowledged that he knew the Union was not going to help him. (Pl.'s Dep. at 33, 34, 39, 41, 53, 58.) Plaintiff was specifically asked during his deposition, "did [Morton] tell you he wasn't going to go any farther [with the grievance]?" (Pl.'s Dep. at 34.) Plaintiff responded "[y]eah. He said that's it. . . . He said the company made up their mind, that's it. He said ain't nothing else he can do." (*Id.*) Plaintiff acknowledged that he took Morton's statement to mean that the Union was not going to fight to get his job back. (*Id.* at 41.) Plaintiff has admitted that this conversation occurred sometime in early August 2005. (*Id.* at 34.) Plaintiff has also stated

that, sometime during September, October or November 2005, two other Union representatives told him that the Union was not going to help him. (*Id.* at 40).

Even considering only Plaintiff's statements, the evidence shows that Plaintiff knew or should have known, at least sometime prior to December 2005, that the Union had elected not to pursue his grievance. *See McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987) (limitations period in § 301 case began when union informed plaintiff that it would not pursue arbitration of plaintiff's grievance); *Moore v. United Auto Workers Local 598*, 2000 WL 33374410, *6 (E.D. Mich. Oct. 16, 2000) (§ 301 cause of action accrued when plaintiff was informed by the union that it would not be able to get his job back). At the very latest, it is apparent that the Plaintiff knew that the Union was not pursuing his claim by April 2006 when he filed his EEOC charge and claimed that the Union was not helping him get his job back. *See Bickers v. Int'l Assoc. of Machinists and Aerospace Workers*, 8 Fed. App'x 514, 516 (6th Cir. 2001) (plaintiff obviously knew of union's failure to pursue his grievance when plaintiff filed a claim in state court for unlawful discharge and testified in a deposition that the union refused to take any action of his behalf to get his job back).

Plaintiff filed the instant lawsuit on August 7, 2007. (Court Doc. 3.) As previously noted by the Court, if Plaintiff knew or should have known that the Union was not going to pursue his grievance on or before February 7, 2007, Plaintiff's claim is barred by § 301's six month statute of limitations. (Court Doc. 28 at 7.) Considering all of the evidence in the record in the light most favorable to the Plaintiff, the Court finds that Plaintiff knew or should have known that the Union was not going to pursue his grievance well before

February 7, 2007. A § 301 claim accrues against the employer at the same time that it accrues against the union. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990). Because Plaintiff did not initiate the instant lawsuit within his six month limitations period, his claim is untimely as to all Defendants.

Accordingly, Defendants' Renewed motions for summary judgment are **GRANTED** and Plaintiff's § 301 claims are **DISMISSED WITH PREJUDICE**.[1]

## IV. CONCLUSION

For the reasons discussed above, Defendant Mueller Company, Steve Jones, Tim Knapp, and Wayne LaFevor's Renewed Motion for Summary Judgment as to Defense Numbered I, Statute of Limitations [Court Docs. 49, 50] is **GRANTED**. Defendant U.S. Steelworkers Local 3115's Renewed Motion for Summary Judgment [Court Doc. 53] is **GRANTED**. Plaintiff's § 301 claim is **DISMISSED WITH PREJUDICE**.

The Clerk shall close the case.

SO ORDERED this 17th day of June, 2008.

                                                  */s/Harry S. Mattice, Jr.*
                                                  HARRY S. MATTICE, JR.
                                                  UNITED STATES DISTRICT JUDGE

---

[1] Because the Court has dismissed Plaintiff's § 301 claims as untimely, it need not address Plaintiff's three pending motions for summary judgment on this claim.